**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BAYRAM SAHIN,

Petitioner,

- v -                                                    Civ. No. 8:13-CV-358
                                                              (GLS/RFT)

UNITED STATES OF AMERICA,

Respondent.

**APPEARANCES:**                                  **OF COUNSEL:**

BAURKOT & BAURKOT                       RAYMOND G. LAHOUD, ESQ.
*Attorney for Petitioner*
227 South Seventh Street
Easton, PA 18042

HON. RICHARD S. HARTUNIAN              SEAN K. O'DOWD
United States Attorney                  Assistant United States Attorney
Northern District of New York
*Attorney for Respondent*
445 Broadway, Room 218
Albany, NY 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

In 1999, Petitioner Bayram Sahin was convicted in the Northern District of New York

pursuant to his plea of guilty to alien smuggling, in violation of 8 U.S.C. § 1324(a)(2)(a), a

misdemeanor. Petitioner presently seeks a Writ of Error *Coram Nobis*, pursuant to the All Writs

Act, 28 U.S.C. § 1651(a), and asks this Court to vacate that conviction. Dkt. No. 1, Pet. In support

of his Petition, Sahin asserts that his conviction is invalid and should be vacated because of the

various due process violations associated with the plea. On January 31, 2014, the Honorable Gary

L. Sharpe, Chief United States District Judge, referred the Petition to the undersigned for the

issuance of a Report-Recommendation. Dkt. No. 4. For the reasons that follow, it is recommended that the Petition be **denied**.

## I. BACKGROUND

According to the record provided to the Court, Bayram Sahin, a citizen of Turkey, first entered the United States on July 29, 1997, as an immigrant. Pet., Ex. B at p. 00007. On October 13, 1999, Bayram Sahin and his brother, Osman Sahin, were taken into custody in Malone, New York, by Customs and Border Patrol officials. *Id.*, Ex. C. The next day, on October 14, 1999, Petitioner and his brother were charged by an Information alleging a violation of 8 U.S.C. § 1324(a)(2)(a) for "knowingly, willfully, intentionally and unlawfully bring[ing] to the United States, Yusuf Cakmak, an alien, knowing and in reckless disregard of the fact that such alien had not received prior official authorization to come to, enter or reside in the United States." *Id.*, Ex. D; *see also United States v. Sahin, et al.*, Crim. Case No. 1:99-CR-530 (N.D.N.Y.).

On October 14, 1999, Petitioner appeared before the Honorable Henry C. Van Acker, Jr., then-United States Magistrate Judge, for an initial appearance on the Information. Sahin did not speak English. Pet, Ex. A. at p. 00004. With the aid of an interpreter, but with no counsel present, Sahin signed a form consenting to proceed before the Magistrate Judge and waiving his right to trial by jury, and entered a plea of guilty before Judge Van Acker. *Id.*, Exs. E, F, & G. Magistrate Judge Van Acker advised Petitioner of his rights, including his right to counsel, and, after a brief allocution, accepted the guilty plea and sentenced Petitioner to thirty days in jail, with no fine, and a special assessment fee of $25. *Id.*, Ex. G. Judgment of conviction was thereafter entered on October 14, 1999. *Id.*, Ex. F. Petitioner alleges that he served out his entire thirty-day sentence. Pet. at p. 3.

On November 19, 1999, removal proceedings were commenced against Petitioner. Pet., Exs. A & B. Petitioner was charged as being removable as a result of the federal conviction, pursuant to Section 237(a)(1)(E)(i) of the Immigration and Nationality Act. *Id.*, Ex. B at p. 00007. On October 24, 2000, Petitioner appeared with counsel before an Immigration Judge.[1] *Id.*, Ex. H. During that proceeding, Petitioner's counsel challenged his removability based upon the federal conviction entered by Judge Van Acker. *Id.* at pp. 00018–00030. Although he insisted he was not attempting to backdoor the federal conviction, counsel argued that the Court should require a greater factual showing of removability beyond the simple fact of Sahin's conviction. Counsel argued that the statute of conviction used broader terms than the removal statute and that there should be a development of the factual record to determine whether Petitioner met the elements for removal.[2] In urging the Immigration Court to develop the facts, counsel explained that Sahin had waived his rights and entered his guilty plea hastily and without the advice of counsel and pleaded with the Immigration Judge for an opportunity to rebut the facts underlying such conviction. *Id.*

At the conclusion of that hearing, the Immigration Judge found Petitioner removable as charged and order him deported to Turkey. *Id.* at pp. 00031–00034. On December 26, 2000, Petitioner timely appealed to the Board of Immigration Appeals, who, on September 26, 2002,

---

[1] It appears from the Department of Homeland Security Record provided by Petitioner that, on October 13, 1999, the date of his arrest by Border Patrol, he was issued a Notice of Removal Proceedings. Pet., Ex. C. That Notice was thereafter superceded on November 19, 1999, with the issuance of a new Notice, directing Petitioner to appear before an Immigration Judge on January 24, 2000. *Id.*, Ex. B. It is not clear when Petitioner first appeared before an Immigration Judge, but from the Record provided, we know that he appeared, with counsel, on September 19, 2000, before Immigration Judge Thomas M. Ragno. *Id.*, Ex. H at p. 00013. That hearing was adjourned after Petitioner's counsel's motion to withdraw was granted. *Id.* at p. 00015. The reason for counsel's withdrawal are unknown to this Court, but seem to have no relevance to the issues presented herein. On October 24, 2000, Petitioner appeared with new counsel before Immigration Judge Michael Straus, who, on that date, after hearing from counsel, entered an oral order of removal. *Id.* at pp. 00016 –00034.

[2] Counsel explained during the Immigration Removal Hearing that Sahin did not enable Mr. Cakmak to illegally enter the country, which is a removable offense, but merely provided transportation for him once he had already crossed the border, which he contended was not a removable offense. Pet., Ex. H.

affirmed the Immigration Court's decision. *Id.*, Ex. I. Thereafter, on October 18, 2002, counsel, on behalf of Petitioner, filed a petition for review with the Second Circuit Court of Appeals. *Id.*, Ex. J. On May 15, 2003, with no opposition stated by the Government, the Second Circuit stayed the order of deportation. However, on April 14, 2005, the Circuit Court dismissed the petition for review due to Petitioner's failure to file a brief in accordance with the scheduling order. *Id.*

According to the instant Petition, Sahin was taken into custody in 2012 by the Department of Homeland Security officials in order to execute the removal order originally entered on October 25, 2000. Currently, Petitioner is in Turkey. Pet. at p. 4 & Ex. A. Petitioner has never appealed, nor filed any petitions, applications, or motions with respect to Judge Van Acker's Judgment, until now.

## II. DISCUSSION

Petitioner comes before this Court, thirteen and one-half years after entering his guilty plea, seeking to vacate his judgment of conviction in this matter. Petitioner asserts that the entire appearance before Judge Van Acker in 1999 was "riddled with clear errors, necessitating this Court's review as to whether Petitioner's due process rights were even interpreted, let alone protected." Pet. at p. 6. Primarily, Petitioner claims that his guilty plea was taken in violation of Federal Rule of Civil Procedure 11 and had he been properly advised of his rights, the nature of the offense, and the consequences that flowed therewith, namely deportation, he would not have pled guilty. *See generally id.* & Ex. A at p. 00004.

Federal courts are empowered to grant writs of *coram nobis* pursuant to the All Writs Act,

28 U.S.C. § 1651(a),[3] where "extraordinary circumstances are present." *Foont v. United States*, 93

F.3d 76, 78-79 (2d Cir. 1996).  To obtain *coram nobis* relief, a petitioner must demonstrate that, "1)

there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure

to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from

his conviction that may be remedied by granting of the writ."  *Id*. at 79 (internal quotation marks,

citations, and alterations omitted); *see also United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir.

2000) (cited in *Biskupski v. United States*, 141 F. App'x 16, 17 (2d Cir. 2005)).  "The proceedings

leading to the petitioner's conviction are presumed to be correct and the burden rests on the accused

to show otherwise." *Foont v. United States*, 93 F.3d at 78-79 (quoting *United States v. Morgan*, 346

U.S. 502, 512 (1954)) (other citation omitted).  The Second Circuit has stressed that *coram nobis*

is "not a substitute for appeal, and relief under the writ is strictly limited to those cases in which

errors of the most fundamental character have rendered the proceeding itself irregular and invalid."

*Id*. at 78 (internal quotation marks, alterations, and citations omitted).

A writ of *coram nobis* is only to be used in the rare circumstance when no other statute in

place would address the specific remedy sought.  *See Carlisle v. United States*, 517 U.S. 416, 429

(1996) (noting that the All Writs Act "is a residual source of authority to issue writs that are not

otherwise covered by statute"); *see also United States v. Morgan*, 346 U.S. at 516 (Minton, J.,

dissenting) (noting the writ of *coram nobis* was issued at common law "to correct errors of fact

unknown to the court at the time of the judgment, without fault of the defendant, which, if known,

would probably have prevented the judgment.").  Thus, "[w]here a statute specifically addresses the

---

[3] The All Writs Act states, in part, that the "Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Carlisle v. United States*, 517 U.S. at 429 (citation omitted).

In the case at bar, Petitioner spends considerable time explaining to the Court all of the deficiencies associated with his initial appearance before Judge Van Acker, as well as his subsequent waiver of his rights and the entering of his guilty plea. Specifically, Petitioner contends that Judge Van Acker failed to ensure that he understood all his rights before allowing him to waive them. This is especially so where the Petitioner did not speak English and seemed to be relying upon the interpreter to help him understand the proceedings. Petitioner also contends that the entire plea colloquy violated Federal Rule of Criminal Procedure 11 and that Petitioner failed to understand the consequences of his guilty plea, especially as it relates to his ability to stay in the United States. In this Court's estimation, this entire line of argument seems to suggest that compelling circumstances exist that need correction in order to achieve justice, in satisfaction of the first prong articulated by the Second Circuit in *Foont*. In this regard, the Court acknowledges, as does the Government, that there are some readily apparent troubling issues with the proceeding before Judge Van Acker. Thus, we can find, for the moment, that Petitioner satisfies the first *Foont* prong.

And, in light of Sahin's deportation to Turkey and his, presumptive, inability to return to the United States where his family resides, we can easily find that Petitioner satisfies the third *Foont* in that he "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Foont v. United States*, 93 F.3d at 79.

But it is the second *Foont* prong that poses an impenetrable hurdle for Petitioner: Can he show that sound reasons exist for his failure to seek appropriate earlier relief? The answer is a resounding "no."

We are behooved to point out that it is questionable whether Petitioner should receive the benefit of this extraordinary writ as a means to achieve his desired end of vacating his conviction when it is clear that such a remedy is already covered by another statute, namely, 28 U.S.C. § 2255. It goes without saying that this post-conviction remedy has its own procedural requirements, such as an "in custody" requirement, which Petitioner plainly would not satisfy, as well as a statute of limitations, that has long expired. But, the fact that this specific remedy is no longer available to Petitioner is of no moment. "The failure to utilize a statutory avenue for post-conviction relief is not the situation the Supreme Court had in mind when it stated that the All Writs Act provides courts with the authority to issue writs not otherwise covered by statute." *United States v. LaPorta*, 20 F. Supp. 2d 530, 533 (W.D.N.Y. 1998); *see also Carlisle v. United States*, 517 U.S. at 429. Petitioner cannot circumvent restrictions placed upon seeking relief under § 2255 by "deliberately waiting to file an application for post-conviction relief and then claim[] that a statutory channel is unavailable to him." *United States v. LaPorta*, 20 F. Supp. 2d at 533; *see also* Pet. at pp. 9-10 (noting that he cannot file for § 2255 relief because he is no longer in custody and therefore no other relief is available to him). The writ of *coram nobis* is not a substitute for an appeal. *Foont v. United States*, 93 F.3d at 78. Though the continued viability of *coram nobis* continues to be questioned, the fact remains that its intended purpose is to provide a remedy for which the statutes in place fail to address, and since a statute is in effect which covers the specific remedy sought, *coram nobis* relief is unavailable to Petitioner. *See Carlisle v. United States*, 517 U.S. at 429 ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." (quoting *Pennsylvania Bureau of Corr. v. United States Marshals Serv.*,

474 U.S. 34, 43 (1985)).

Moving even one step further, though no specific time limit applies to such writs, because "an error of constitutional dimension at the time of plea or sentence renders a conviction voidable, not void, . . . coram nobis relief may be barred by the passage of time." *Foont v. United States*, 93 F.3d at 79. "The courts have not established a bright line timeliness rule, leaving district courts, at their discretion, to 'decide the issue in light of the circumstances of the individual case.'" *Echendu v. United States*, 2003 WL 21653370, at *6 (E.D.N.Y. July 14, 2003) (quoting *Foont v. United States*, 93 F.3d at 79). "[I]f the district court decides that there was not sufficient justification for [the petitioner's] failure to seek relief at an earlier time, the writ is unavailable and [the] petition for coram nobis should be dismissed." *Nicks v. United States*, 955 F.2d 161, 167-68 (2d Cir. 1992). Thus, only when "sound reasons exist[] for failure to seek appropriate earlier relief" will *coram nobis* relief be available. *United States v. Morgan*, 346 U.S. at 512 (quoted in *Nicks v. United States*, 955 F.2d at 167). In construing the proper inquiry for "sound reasons," the Second Circuit has rejected a laches requirement which would necessitate the government to establish prejudice due to the petitioner's delay, and instead focused the inquiry on the petitioner's justification for the delay. *See Foont v. United States*, 93 F.3d at 80 (cited in *Echendu v. United States*, 2003 WL 21653370, at *6). "In the absence of sound reasons provided by the petitioner, the courts have generally found that a belated petition for coram nobis should be dismissed if its filing has been delayed for more than several years. *See Echendu v. United States*, 2003 WL 21653370, at *6 (citing *Foont v. United States*, at 80) (petitioner barred by unjustified four year and eight-month delay) & *Mastrogiacomo v. United States*, 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (petition barred due to unjustified three year delay)).

As observed above, Petitioner has wholly failed to assert any sound reasons for the thirteen and one-half-year delay in challenging his federal conviction. If Sahin didn't understand the deportation consequences of a conviction at the time of his plea and sentence, he certainly was aware of such consequence when removal proceedings commenced against him as early as November 19, 1999, and certainly in October 2000 when, through counsel, he appeared at an Immigration Court posing the very same due process challenges to the federal conviction he now states to the Court. And he clearly was aware that his conviction rendered him deportable when an Immigration Judge ordered him deported in October 2000, yet, there was no request that this Court, or a higher court, revisit the procedural deficiencies that led to his conviction. Similarly, in 2003, the Second Circuit granted a stay of Sahin's deportation in order to hear his appeal, which he thereafter failed to perfect, resulting in dismissal of that appeal on April 14, 2005. Yet, Petitioner delayed another eight years before bringing the challenge to this Court. Whether the Department of Homeland Security unreasonably delayed in acting on the deportation order is of no moment. Petitioner cannot state that he was ignorant of the fact that a deportation order was issued in October 2000, and that in 2005, upon dismissal of the Second Circuit appeal, that order was ready to be acted upon by government officials at any time. Petitioner's false sense of security in remaining in the United States due to a passing of time without government action does not, in any way, excuse his failure to pursue avenues of relief that may have been available to him, including bringing a writ of error *coram nobis* much sooner than March 2013. 28 U.S.C.A. § 1651(a); *see also Echendu v. United States*, 2003 WL 21653370, at *7 (finding *coram nobis* relief time-barred where Petitioner delayed nine years after conviction and five years after enactment of the relevant statute to apply for relief without any viable justification).

In summary, it is this Court's view that the extraordinary remedy of a writ of *coram nobis* should not apply in this case in light of the fact that the specific remedy sought by Petitioner, vacating his conviction, was available to him through another statute, namely 28 U.S.C. § 2255, which Petitioner never availed himself of. Furthermore, notwithstanding any asserted error in connection with his guilty plea and associated waivers, Plaintiff has not justifiably explained the thirteen and one-half-year delay in seeking this extraordinary remedy from the Court.

Therefore, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of Error *Coram Nobis* should be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:  March 12, 2014
       Albany, New York


Randolph F. Treece
U.S. Magistrate Judge