I, Bayram Sahin, being of legal age and of sound mind, state, under penalties of perjury, the following:

1. I am a citizen of Turkey. I am currently living in Turkey.

2. My wife, Esma, and my sons, Mustafa, Muhammet, and Semi live in the United States.

3. On or about July 29, 1996, I became a permanent resident of the United States. I lived in the United States, in the State of Connecticut, with my wife and eldest son. I worked as a dishwasher in a diner to support my family.

4. On or around October 13, 1999, I traveled from my home in Connecticut to Upstate New York with my brother, Osman. Osman was also a permanent resident of the United States at that time. He asked me to drive an acquaintance of his to Connecticut on the way back. As we were driving, we were pulled over by the police. We understood very little English, but I knew to show the officer my green card and driver's license. The officer asked for identification from my brother's acquaintance, but he did not provide one to the officer. We were then arrested.

5. At the police station, We spoke with the police with no interpreter or lawyer present. My brother, Osman answered with what little english he knew. I didn't know any english. I understood very little of what was happening. I was detained at the police station overnight.

6. The next morning, the police escorted my brother and me to court, and we stood before a judge together. We did not have separate hearings. We did not have a lawyer. The only person with us was a Turkish/English interpreter. I did not understand anything that the judge was telling us, and the interpreter translated very little of what was being said. He certainly did not explain what I was accused of, or what I was admitting to doing. He was answering the judge's questions even though he was not telling either of us the questions so that we could answer them. We asked the interpreter to have the judge explain to us what the charges were, but the interpreter said that it was nothing, and that he did not need to tell us about this. I did not have a chance to explain myself or anything about the situation surrounding my arrest. I asked about obtaining a lawyer, but he said I did not need one. I had no idea what was going on.

7. The interpreter also hurried me to sign several documents. He did not tell me what any of it meant, or what I was doing by signing those documents. He never told me I was admitting to knowingly helping someone come into the United States who was not authorized to do so, nor did he tell me that I was giving up my right to appeal any decision of the court.

8. Either during the hearing or immediately thereafter, the interpreter told me that I would go to jail for 30 days. After that, I would be free and be able to return to my normal life. He made clear that nothing else would happen to me. I believed that he was accurately interpreting the words of the judge.

9. In October and November of 1999, I served 30 days in prison. This matched what the interpreter had told me, so after I completed my time in jail, I thought everything was done and returned to my normal life.

10. However, very soon after leaving prison, I was again arrested, this time by immigration officers. I did not know why this was happening. The translator had told me that everything was going to be fine, and that I could return to my normal life after prison.

11. Nevertheless, in or around November of 1999, I had to go to immigration court. I did not understand what was happening to me, or generally what was going on. I did not understand why I needed to go to another court.

12. In 1999, I hired a lawyer, James Swaine, to represent me in Immigration Court. I explained to him that I did not do anything wrong, and that I had no understanding of the proceedings when I went before the judge with my brother. He tried to explain my situation to multiple courts over the next several years.

13. In the meantime, my brother, who had gone to jail for the same reason as I had, was suddenly picked up by government officials in or around 2003. They came to his house in the middle of the night, put him in detention, and deported him to Turkey within about a month.

14. However, immigration officers did not come to deport me. My court cases continued. In 2005, after a ruling from one of the courts, my lawyer told me my appeal had concluded. He did not tell me anything else. I had no further communication with him. He said nothing about what I was to do in the future. I also did not receive any notice or other document from the government telling me anything about my case. Additionally, no immigration officers came to deport me at the conclusion of my appeals.

15. I continued my life with my family after I ended my relationship with Mr. Swaine. I did not go to any further court hearings. No government officials or anyone from the court contacted me for many years after Mr. Swaine told me my appeals had concluded.

16. In or around 2011, my wife became a United States citizen. My son also became a United-States citizen around that time. ( My Wife, February 17, 2011 and My Son, July 30, 2010).

17. After receiving nothing from the government or my former attorney, Mr. Swaine, about my case for approximately four years, I was not sure about my status in the United States, so in or around 2009 or 2010, I went to see a lawyer. I specifically went to see a lawyer who spoke Turkish. His office was in Brooklyn, New York. I wanted to understand everything that was going on. I gave this lawyer, Feridun Keles, all my information. He told me that everything was fine. He also told me that because my wife was now a citizen, she could sponsor me and submit an application to immigration officials on my behalf.

18. After submitting my application, we were scheduled for an interview with USCIS on December 7, 2011. My lawyer told us to go to this interview as a necessary part of our case. My wife, my son, and I went to USCIS for our interview. Instead of conducting an interview, immigration officials arrested me in front of my wife and son. I learned for the first time during that arrest that I had an order of deportation against me. Within about a month, I was quickly deported from the United States back to Turkey.

21 Mart 2014

19. I later learned that the lawyer I hired in 2009, Mr. Keles, was not, in fact, a lawyer, although he had represented himself as one and assisted me with submitting my immigration forms. We then realized that he had told us completely inaccurate information. He had told us that I would be able to stay in the United States and that there would be no problem with my application.

20. Once I was deported from the United States, my family and I immediately contacted a lawyer. I explained, once again, that I had done nothing wrong when I was arrested in 1999, and that I had not understood what was happening to me when I went in front of the judge when I apparently signed a document saying I was guilty. I had no idea what I was signing and what the judge was telling me.

Sincerely,

Bayram Sahin

№ 04115

21 Mart 2014

Sakarya 2. Noteri
İmzaya Yetkili Başkatibe
Sevda ÇAKAR